671.A.2d 1156

COMMONWEALTH of Pennsylvania, Appellee,

v.

**Wendy TITHER, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1995.

Filed Feb. 21, 1996.

Jeffrey D. Litts, Assistant Public Defender, Doylestown, for appellant.

Troy Leitzel, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before BECK, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge.

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Bucks County after appellant was convicted of driving under the influence and sentenced to forty-eight (48) hours to twenty-three (23) months imprisonment. Appellant herein contends that the trial court erred in denying her motion to suppress evidence obtained subsequent to an invalid investigative stop. Upon review, we find that the trial court erred in concluding that reasonable suspicion existed to justify the investigative stop. Accordingly, we reverse the judgment of sentence and remand for a new trial consistent with this opinion.

The trial court concisely set forth the facts of this case as follows:

In this case, the officer, a 23–year veteran in full uniform and in a marked police vehicle, was on routine patrol at about 6:55 p.m. in a section of Bristol Township, Bucks

438

County, Pennsylvania, known to this officer for frequent drug transactions and prostitution problems. For 11 years prior to this incident, the officer had patrolled this particular area of the Township. During his 23 years of service, he made 40 to 50 drug arrests, including in this particular area.

Suddenly he heard someone yell, "5–0, 5–0." He knew this to be street jargon warning that police are in the area. He then noticed several things at the same time. He observed an Oldsmobile Cutlass automobile stopped in the middle of the one-way street about 100' in front of him. He noted people on the sidewalk. He also noticed a male standing in the street, reaching into the car. Upon hearing "5–0, 5–0" being yelled, the male left the car and walked into the nearest building. The car pulled away immediately. The officer concluded that he was witnessing a possible drug sale and he proceeded to try to follow the vehicle to stop it and look for drugs. Meanwhile, other cars got between them. Finally, the Oldsmobile made a left turn and so did the officer. The Oldsmobile then pulled over on its own and stopped. The officer had not activated his overhead lights. He noted that the interior light was on in the car, and he observed the female driver looking towards the right and downward. The male passenger looked left and downward toward the middle of the seat.

The officer stopped behind the Oldsmobile and approached on foot. As he arrived at the rear of the vehicle, it started to pull away so he knocked on the side windows of the vehicle. The defendant stopped the vehicle again.

(Trial Court Opinion, p. 2–3). Upon speaking with appellant, the officer sensed an odor of alcohol on her person and observed alcoholic beverages in the vehicle. Appellant was asked to perform a field sobriety test which she failed. Subsequent to her arrest, appellant was given two Intoximeter 3000 tests which revealed that her blood alcohol level was .201 and .204.

When reviewing the denial of a motion to suppress evidence, our responsibility is as follows:

to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Talley,* 430 Pa.Super. 351, 634 A.2d 640, 641–642 (1993) (citations omitted) (citing *Commonwealth v. Lopez,* 415 Pa.Super. 252, 609 A.2d 177, 178–179 (1992)).

We note initially that appellant was not stopped pursuant to a traffic violation. It is clear that the officer would have had authorization to stop appellant if he reasonable believed that a provision of the Motor Vehicle Code was violated. 75 Pa. C.S.A. § 6308; *Commonwealth v. DeWitt,* 530 Pa. 299, 608 A.2d 1030 (1992). Since the officer in this case did not testify to any traffic violation committed by appellant prior to the contested stop, we must look elsewhere for justification.

An officer does have the authority to approach or briefly detain a citizen without probable cause for investigatory purposes. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. Arch,* 439 Pa.Super. 606, 654 A.2d 1141, (1995). "In order for such a stop to be reasonable under the Fourth Amendment to the United States Constitution, the police officer must point to specific and articulable facts 'which in conjunction with rational inferences deriving therefrom' warrant the initial stop." *Arch, supra,* 654 A.2d at 1143 (quoting *Commonwealth v. Prengle,* 293 Pa.Super. 64, 437 A.2d 992, 994 (1981)). To meet this standard, the officer must observe unusual and suspicious conduct by the suspect which leads the officer to reasonably believe that criminal activity may be afoot. *Arch, supra,* 654 A.2d at 1144. Furthermore, the officer's conclusion cannot be based

upon an "unparticularized suspicion" or "hunch." *Id.* (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883).

In the present case, the officer testified that he suspected that a drug transaction was in progress based upon his observation of the following: that the area had a reputation for frequent drug transactions, that a black male was reaching into appellant's car, that someone yelled "5-0, 5-0", and immediately thereafter, the man walked into a house and appellant drove away. The officer testified that he did not witness a transaction of any kind between appellant and the man leaning in the window. The officer did not see any money or drugs in the possession of either party. Further, the officer had no prior information that appellant was involved in criminal activity. With only the aforementioned facts before the officer, we are not convinced that reasonable suspicion of a drug transaction existed.··

The facts relied upon by the officer when viewed individually or in their totality, do not constitute reasonable suspicion. The fact that appellant was observed in a high crime· area known for drug-related activity is not sufficient to justify an investigative *Terry* stop. *Commonwealth v. Martinez*, 403 Pa.Super. 125, 588 A.2d 513, 515–516 (1991); *Commonwealth v. Wilson*, 440 Pa.Super. 269, 655 A.2d 557, 561 (1995). Similarly, that appellant drove away soon after someone yelled "5-0, 5-0" is likewise deficient to constitute reasonable suspicion. In *DeWitt, supra*, 608 A.2d at 1034, our Supreme Court held that flight from a police officer alone is insufficient to create a reasonable suspicion of criminal activity. *See also Martinez, supra*, 588 A.2d at 514.

Finally, the fact that there was· a man reaching into appellant's car window without any further observations is not indicative of criminal activity. In *Commonwealth v. Malson*, 434 Pa.Super. 155, 642 A.2d 520, 524, (1994), this court concluded that reasonable suspicion to stop the suspect did not exist. In its opinion, the court stated that "[o]ur decision in this regard is supported by several cases which stand for the proposition that an exchange of some unknown items between citizens in a public place, even a place known to be frequented

by drug traffickers, does not, without more, establish probable cause to arrest those citizens." *Id.* 642 A.2d at 523; *See also Commonwealth v. Agnew,* 411 Pa.Super. 63, 600 A.2d 1265 (1991). In the present case, the officer did not even observe an exchange between appellant and the man leaning into her window. The officer did not witness any actions which would suggest a transaction, let alone a drug transaction.

As explained above, each of the officer's observations alone does not rise to a reasonable suspicion that criminal activity was afoot. Even when the observations are viewed in their totality, we come to the same conclusion. As this court has previously stated, "[w]hile the officer's curiosity might have been aroused by the action that was witnessed, and while he may have had a hunch that illegal contraband was involved, that is not sufficient." *Wilson, supra,* 655 A.2d at 563 (quoting *Commonwealth v. Greber,* 478 Pa. 63, 385 A.2d 1313, 1316 (1978)). Since we find that the officer did not have the requisite reasonable suspicion of criminal activity to justify the investigative stop, all evidence obtained subsequent thereto should have been suppressed. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Accordingly, we reverse the judgment of sentence and remand for a new trial consistent with this opinion.

Reversed and remanded; jurisdiction relinquished.