**COMMONWEALTH OF Pennsylvania**

v.

**Leonardo COLLAZO, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 29, 1997.

Filed April 21, 1997.

alleged criminal activity with particular spec-ificity. We find that the *Terry* stop is lawful.

Appellant was convicted of Possession of Marijuana, 35 P.S. § 780–113(a)(31), and sen-tenced to thirty days probation and a $100.00 fine. He argues on appeal that the drugs that were recovered, as well as his post-arrest statements, should have been sup-pressed. He also claims he was entitled to a jury trial. We affirm.

The trial court opinion set forth the follow-ing facts. One afternoon, as he was leaving a police department sub-station, Officer Claude LaCombe was approached by a man who told the Officer that an individual was selling drugs at a nearby intersection. The suspect was described as wearing a black hat and blue shirt and riding a gold bicycle. After calling for assistance, Officer LaCombe went to the intersection where he saw appellant talking to two people who were sitting on the corner. Appellant was wearing a black hat and blue shirt and was straddling a gold bicycle.

Officer LaCombe immediately approached appellant and told him he had information that appellant was selling drugs. The officer asked appellant if he had any drugs and appellant replied that he did not. The officer then asked if he could search appellant and his bicycle. Appellant indicated to the officer that he could conduct the search and when the officer explained to appellant that he was entitled to stop the search at any time, appel-lant allowed the search to commence and did not attempt to end it.

A pat-down of appellant's person revealed a knife in his pocket. A search of the bicy-cle's basket uncovered a bag filled with smaller bags containing marijuana. Appel-lant was placed under arrest and given his *Miranda* warnings. As he was being placed in the patrol car, appellant asked police if he could leave his bicycle with one of the per-sons to whom he had been speaking. The officers obliged.

■ Appellant's first claim is that Officer LaCombe was not authorized to stop and question him based only on the information

Stephen G. Heckman, Public Defender, Ambler, for appellant.

Hollie John, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before McEWEN, President Judge, and BECK and KELLY, JJ.

BECK, Judge.

The issue is whether a *Terry*[1] stop is lawful where a citizen approaches a police officer and describes the suspect and his

---

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

given by the citizen. Appellant argues that absent Officer LaCombe's personal observation of appellant engaging in suspicious/criminal activity, the officer's reliance on the tip was insufficient and the drugs must be suppressed.

■ Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. *Commonwealth v. Merkt,* 411 Pa.Super. 127, 600 A.2d 1297 (1992).

We conclude that this issue is controlled by the holding of *In the Interest of S.D.,* 429 Pa.Super. 576, 633 A.2d 172 (1993). Although there are three separate opinions in *S.D.,* all panel members agreed that the officer was justified in making the initial stop. Police were told by a pedestrian that two armed black men with drugs were on a certain street corner. Police went to the location, observed S.D. there with another man and immediately conducted a pat-down search. The officer who searched S.D. felt a large, hard object in one of his pockets which turned out to be cocaine. On the issue of suppression, the *S.D.* court held that the initial stop of the men was justified based on the pedestrian's tip.[2] The court noted that an officer need not personally observe suspicious activity in order to conduct an investigatory stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), stating: "Identified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances." *S.D., supra* at 580, 633 A.2d at 174. Further, the stop in *S.D.* was supported by the relevant factors to be considered in such cases, namely, the specificity of the description, the proximity of the crime to the sighting of the suspect, the time and place of the confrontation and the nature of the offense. *Id.*

Here, Officer LaCombe received a face-to-face citizen's complaint of a crime in prog-

ress. When he promptly arrived at the location, the officer observed appellant, matching exactly the detailed description given by the citizen. Officer LaCombe then approached appellant and began speaking with him about the information he had received. Under the authority of *S.D.,* the initial stop and questioning of appellant was proper. *See also Commonwealth v. Stokes,* 480 Pa. 38, 389 A.2d 74 (1978) (victim and eyewitness information regarding the commission of a crime sufficient to establish probable cause); *Commonwealth v. Hamme,* 400 Pa.Super. 537, 583 A.2d 1245 (1990) (police can rely on "information from other officers or citizen witnesses;" officer made valid *Terry* stop based on other officer's observation of suspect's erratic driving).

■ We caution that the authority of a police officer in these circumstances is limited. He or she is permitted only to "approach and briefly detain" a potential suspect "for investigatory purposes." *Commonwealth v. Arch,* 439 Pa.Super. 606, 654 A.2d 1141, 1143 (1995). In *Arch,* this court noted that while an officer is prohibited from relying on an "unparticularized suspicion" or a "hunch" as a basis for a *Terry* stop, he or she may rely on a police radio broadcast if the suspect matches the specific description given by the individual who reported the crime. *Id.* at 612–14, 654 A.2d at 1144 (citing *Commonwealth v. Prengle,* 293 Pa.Super. 64, 437 A.2d 992 (1981)).

Conversely, a "common report" is insufficient to support an investigatory stop. In *Commonwealth v. Williams,* 298 Pa.Super. 466, 444 A.2d 1278 (1982), neighborhood residents informed a police officer that a particular individual was a known "bicycle thief" who had in his possession some bicycles he had stolen. When the officer later saw the individual riding a bike, he made a *Terry* stop to investigate the matter. This court held that the information from the citizens was insufficient to cause the officer to believe

---

2. The author of *S.D.,* Judge Olszewski, found that the police officer exceeded his authority when he removed the cocaine from S.D.'s pocket since the officer failed to state at the suppression hearing that he believed the cocaine was a weapon. Judge Olszewski found that suppression was warranted under an analysis of federal and state

case law. In a concurring opinion, Judge Kelly agreed that suppression was appropriate under federal case law. In dissent, Judge Johnson concluded that suppression was not warranted since a specific assertion regarding the officer's perception was unnecessary under the facts of the case.

that criminal activity was afoot. The lack of a specific crime report was fatal in *Williams*.

A detailed citizen's report of a specific crime in progress is appropriately addressed by a *prompt investigatory stop*; general information to police about a person who has broken the law in the past is not. Further, the intrusion of which appellant complains is not overly burdensome since, as in all *Terry* stops, the "suspect's expectation of privacy is not sufficiently infringed by the minimal intrusion attendant to an investigatory stop." *Commonwealth v. Epps*, 415 Pa.Super. 231, 608 A.2d 1095, 1096 (1992).

Because the initial stop of appellant was proper, and because the search that followed was made with appellant's consent, the trial court properly denied suppression of the drugs.

Appellant's second claim of error is that his post-arrest statements, regarding his ownership of the bicycle, should have been suppressed. The trial court refused to suppress the statements because it found that appellant was given his *Miranda* warnings prior to uttering the statements and because the statements constituted "an act of free will—a blurt out." Appellant insists that the court should not have believed Officer La-Combe when he testified that warnings were given and the statement was voluntarily offered. With respect to this issue, appellant concedes: "Although an issue of credibility, this matter should be resolved in favor of the defense based on LaCombe's inconsistencies." Appellant's Brief at 8.

It is the sole province of the suppression court to determine the credibility of the witnesses before it. In so doing, the court may believe all, part or none of the evidence presented. *Commonwealth v. Benton*, 440 Pa.Super. 441, 655 A.2d 1030 (1995). We cannot second-guess the suppression court's credibility determinations. The evidence clearly is sufficient to support the court's findings, making reversal on this issue unwarranted.

Appellant's final claim is that he was entitled to a jury trial. The law is clear that only serious offenses bring with them the constitutional right to be tried by a jury.

*Commonwealth v. Mayberry*, 459 Pa. 91, 327 A.2d 86 (1974). Whether an offense is serious or petty is based on the sentence that could potentially be imposed. Where that sentence exceeds six months in prison, the offense is considered serious and the right to a jury trial attaches. *Id.; Commonwealth v. Appel*, 438 Pa.Super. 214, 652 A.2d 341 (1994).

The maximum penalty for the instant offense is thirty days in prison. *See* 35 P.S. § 780–113(g). Appellant was not entitled to a jury trial under these circumstances.

Judgment of sentence affirmed.