J. A15045/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA :     IN THE SUPERIOR COURT OF
:            PENNSYLVANIA
v. :
:
LANEILL C. SIMMONS, :       No. 491 MDA 2017
:
Appellant :

Appeal from the Judgment of Sentence, March 9, 2017,
in the Court of Common Pleas of Luzerne County
Criminal Division at No. CP-40-CR-0002378-2014

BEFORE: PANELLA, J., MURRAY, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED AUGUST 13, 2018**

Appellant, Laneill C. Simmons, appeals from the March 9, 2017 judgment of sentence following his conviction of manufacture, delivery, or possession with intent to manufacture or deliver cocaine; tampering with evidence; and possession of marijuana.[1] The trial court appointed the Luzerne County Public Defender's Office as appellant's counsel for his appeal. Richard M. Buttner, Esq., filed a petition to withdraw on April 9, 2018, alleging

---

[1] 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. § 4910(1), and 35 P.S. § 780-113(a)(31), respectively. Appellant was also charged with manufacture, delivery, or possession with intent to manufacture or deliver marijuana and resisting arrest. 35 P.S. § 780-113(a)(30) and 18 Pa.C.S.A. § 5104, respectively. The Commonwealth withdrew the possession with intent to deliver charge, and the jury acquitted appellant of resisting arrest.

that the appeal is frivolous, accompanied by an **Anders** brief.[2]  After careful review, we grant Attorney Buttner's withdrawal petition and affirm the judgment of sentence.

The trial court provided the following factual and procedural history:

> On August 20, 2014, the Luzerne County District Attorney filed a Criminal Information charging [appellant] with manufacture, delivery, or possession with intent to manufacture or deliver cocaine, manufacture, delivery, or possession with intent to manufacture or deliver marijuana, resisting arrest, tampering with evidence, and possession of marijuana.  [Appellant] pleaded not guilty and a jury trial commenced on January 17, 2017.  On January 19, 2017, the jury returned guilty verdicts on Counts 1, 4, and 5.  A Pre-Sentence Investigation (PSI) was ordered to be completed by the Luzerne County Adult Probation and Parole Department, and a sentencing hearing was scheduled for March 9, 2017.
>
> At the sentencing hearing, counsel for the Commonwealth and [appellant] were heard, and [appellant] made a statement on his own behalf. After review and consideration of the submissions of counsel, the statement of [appellant], and a review of the PSI, [the trial c]ourt sentenced [appellant] to an aggregate sentence of thirty-nine (39) to one hundred twenty (120) months['] imprisonment in a state correctional facility.  Following the imposition of sentence, [appellant] was advised of his post-sentence rights.  Defense counsel requested permission to withdraw, and indicated to [the trial c]ourt that [appellant] intended to secure a public defender to pursue an appeal of his sentence.  The [trial c]ourt the[n] granted defense counsel permission to withdraw, and on March 20, 2017, the Luzerne County Public Defender's Office approved [appellant's] application for representation.

---

[2] **See Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

A counseled defense motion was then filed on March 21, 2017, seeking permission to file post-sentence motions ***nunc pro tunc***. [The trial c]ourt lacked jurisdiction to hear the motion, however, because on March 16, 2017, unbeknownst to defense counsel, [appellant] had filed a ***pro se*** Notice of Appeal of his judgment of sentence. This procedural posture was altered on May 31, 2017, when the Superior Court granted a defense application for remand and directed [the trial c]ourt to dispose of [appellant's] motion for permission to file post-sentence motions ***nunc pro tunc***. [(Per curiam order, 5/31/17.)] Thereafter, on June 5, 2017, we allowed [appellant] to file post-sentence motions ***nunc pro tunc***.

[Appellant] then filed a counseled post-sentence motion, which, for purposes of this appeal, raised an allegation that the verdict with regard to [appellant's] conviction for possession with intent to deliver cocaine was against the weight of the evidence. [Appellant's] post-sentence motion was denied by [the trial c]ourt on June 29, 2017.

Subsequently, an issue arose regarding whether [appellant] desired continued representation by the Luzerne County Public Defender's Office. At the direction of the Superior Court, this [c]ourt held a hearing on August 8, 2017, to determine whether [appellant] wanted to proceed ***pro se***, or whether he wanted to proceed represented by Public Defender Attorney Amanda Young. Following that hearing, during which [appellant] did not waive his right to counsel but instead indicated that he wished to be represented by counsel, [the trial c]ourt ordered that Attorney Young and the Luzerne County Public Defender's Office remain as counsel for [appellant]. [Appellant] was then directed to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) and the Commonwealth was requested to respond thereto. [Appellant] filed a timely, counseled Rule 1925(b) Statement on August 31, 2017, and the

> Commonwealth filed its response on September 25, 2017.

Trial court opinion, 11/20/17 at 1-3 (footnotes and citations to the record omitted). The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on November 20, 2017.

On April 9, 2018, Attorney Buttner filed in this court a petition to withdraw as counsel and an **Anders** brief, wherein Attorney Buttner states there are no non-frivolous issues preserved for our review.

> A request by appointed counsel to withdraw pursuant to **Anders** and **Santiago** gives rise to certain requirements and obligations, for both appointed counsel and this Court. **Commonwealth v. Flowers**, 113 A.3d 1246, 1247-48 (Pa.Super. 2015).
>
> > These requirements and the significant protection they provide to an **Anders** appellant arise because a criminal defendant has a constitutional right to a direct appeal and to counsel on that appeal. **Commonwealth v. Woods**, 939 A.2d 896, 898 (Pa.Super. 2007). This Court has summarized these requirements as follows:
> >
> > > Direct appeal counsel seeking to withdraw under **Anders** must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an **Anders** brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective

- 4 -

> appellate presentation thereof.
>
> ***Anders*** counsel must also provide a copy of the ***Anders*** petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed ***pro se*** or raise any additional points worthy of this Court's attention.

***Woods***, 939 A.2d at 898 (citations omitted).

There are also requirements as to the precise content of an ***Anders*** brief:

> [T]he ***Anders*** brief that accompanies court-appointed counsel's petition to withdraw . . . must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

> *Id.* at 1248. If this Court determines that appointed counsel has met these obligations, it is then our responsibility "to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Id.* at 1248. In so doing, we review not only the issues identified by appointed counsel in the ***Anders*** brief, but examine all of the proceedings to "make certain that appointed counsel has not overlooked the existence of potentially non-frivolous issues." ***Id.***

***Commonwealth v. Hankerson***, 118 A.3d 415, 419-420 (Pa.Super. 2015).

Our review of Attorney Buttner's petition to withdraw, supporting documentation, and ***Anders*** brief reveals that he has complied with all of the foregoing requirements. We note that counsel also furnished a copy of the brief to appellant; advised him of his right to retain new counsel, proceed ***pro se***, or raise any additional points that he deems worthy of this court's attention; and attached to the ***Anders*** petition a copy of the letter sent to appellant as required under ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa.Super. 2005) (citation omitted). ***See Commonwealth v. Daniels***, 999 A.2d 590, 594 (Pa.Super. 2010) ("While the Supreme Court in ***Santiago*** set forth the new requirements for an ***Anders*** brief, which are quoted above, the holding did not abrogate the notice requirements set forth in ***Millisock*** that remain binding legal precedent."). Appellant did not respond to Attorney Buttner's ***Anders*** brief. As Attorney Buttner has complied with all of the requirements set forth above, we conclude that counsel has satisfied the procedural requirements of ***Anders***.

Once counsel has met his obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Santiago*, 978 A.2d at 355 n.5, quoting *Commonwealth v. McClendon*, 434 A.2d 1185, 1187 (Pa. 1981). Thus, we now turn to the merits of appellant's appeal.

Appellant raises the following issues for our review:

1. Whether the verdict was against the weight of the evidence, specifically the charge of PWID-cocaine, and whether [a]ppellant possessed the contraband for personal use as opposed to distribution?

2. Whether [a]ppellant was not tried before a jury of his peers in violation of his Six [sic] Amendment right?

3. Whether the transcript from the suppression hearing of July 30, 2016 was tampered with and altered in any way?

4. Whether [a]ppellant was subject to prosecutorial misconduct?

5. Whether the trial court erred in failing to grant [a]ppellant's suppression motion?

6. Whether [a]ppellant's sentence was harsh and excessive?

*Anders* brief at 4.

## I.

In his first issue on appeal, appellant avers that the jury's verdict was contrary to the weight of the evidence. Specifically, appellant contends that

his evidence was more credible and that the jury should have believed his contention that his possession of cocaine and marijuana was for personal use and not for distribution. (*See id.* at 16.) Our standard of review for determining whether a verdict is compatible with the weight of the evidence is well settled:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Widmer*, [] 744 A.2d 745, 751-52 (Pa. 2000); *Commonwealth v. Brown*, [] 648 A.2d 1177, 1189 (Pa. 1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Widmer*, [] 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id.* at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Brown*, [] 648 A.2d at 1189.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. *Brown*, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the

gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. ***Commonwealth v. Farquharson***, [] 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Widmer***, [] 744 A.2d at 753 (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

***Widmer***, [] 744 A.2d at 753 (quoting ***Coker v. S.M. Flickinger Co.***, [] 625 A.2d 1181, 1184-85 (Pa. 1993)).

***Commonwealth v. Clay***, 64 A.3d 1049, 1054-1055 (Pa. 2013).

A fact-finder is free to believe all, part, or none of the evidence presented. ***Commonwealth v. Mosley***, 114 A.3d 1072, 1087 (Pa.Super. 2015). This court cannot assume the task of assessing the credibility of the witnesses or the evidence presented at trial, as that task is within the exclusive purview of the fact-finder. ***Hankerson***, 118 A.3d at 420.

Appellant's weight of the evidence argument is grounded in the theory that the jury should have found both appellant's own testimony and the testimony of his expert, Ned Delaney, to be more credible. (***Anders*** brief at 16-17.) In declining to find that the conviction was against the weight of the evidence, the trial court found the verdict reached was not so contrary to the evidence as to shock one's "sense of justice." (Trial court opinion, 11/20/17 at 5.) We find no abuse of discretion in such a conclusion. Accordingly, appellant's weight of the evidence claim is without merit.

## II.

In his second issue on appeal, appellant contends that his Sixth Amendment rights were violated because he was not tried before a jury of his peers. Specifically, appellant avers that he was not tried by a "fair cross-section of his peers and the community," and as a result, he was deprived of his equal protection rights under the Sixth Amendment. (***Anders*** brief at 19.)

Issues pertaining to the racial composition of a jury are governed by the Supreme Court of the United States' holding in ***Batson v. Kentucky***, 476 U.S.

79 (1986.) "In **Batson**, the [High Court] held that a prosecutor's challenge to potential jurors solely on the basis of race violates the Equal Protection Clause of the United States Constitution." **Commonwealth v. Reid**, 99 A.3d 470, 484 (Pa. 2014) (citation omitted), citing **Batson**, 476 U.S. at 89.

Before we can determine the merits of appellant's **Batson** claim, we must first determine whether it was properly preserved. The Pennsylvania Rules of Appellate Procedure mandate that any issue not raised before the lower court cannot be raised for the first time on appeal and is, therefore, waived on appeal. Pa.R.A.P. 302(a); **see also Commonwealth v. Edwards**, 177 A.3d 963, 971 (Pa.Super. 2018).

In the instant appeal, there is no record of any **Batson** claim being raised before the trial court; rather, appellant is raising this issue for the first time before this court. Accordingly, we find that appellant's second issue is waived on appeal.

### III.

Appellant next argues that the transcript from the July 30, 2016 suppression hearing was tampered with and altered. Specifically, appellant "maintains that the transcript from that evidentiary [] hearing was tampered with by the [Commonwealth] and, therefore, he was deprived of a fair suppression hearing and, therefore, a fair trial." (**Anders** brief at 19.)

Based on our review of the record, we agree with Attorney Buttner's following analysis of this issue:

> The record reflects that the trial court rendered its decision on the record at the suppression hearing, even before a transcript from the suppression hearing had been prepared and filed. Therefore, it is impossible to see how this assertion could have affected the outcome of the trial court's decision on whether to suppress evidence. Appellant's private trial counsel reviewed this challenge with the trial court at the start of trial. There, trial counsel indicated to the trial court that he discussed it with [a]ppellant's original counsel who handled the suppression hearing and had her review the transcript. She, in turn, indicated that the transcript was accurate.
>
> Finally regarding any prejudice that can be discerned from inaccuracies in the suppression transcript, the trial transcript reveals that the suppression transcript was not utilized for impeachment. Therefore, even if there were inaccuracies in the suppression transcript, that it was not utilized presents a situation absent of prejudice to [a]ppellant.

*Anders* brief at 29.

Accordingly, we find that appellant's third issue is without merit.

**IV.**

Appellant next avers that the Commonwealth engaged in prosecutorial misconduct. Appellant specifically alleges that the Commonwealth altered the suppression hearing transcript; that the Commonwealth "lied at a bail hearing about his knowledge of a DUI arrest and, also, called [a]ppellant's bondman asking that his bail be revoked[;]" and that during closing argument, the Commonwealth argued that appellant, "deserved to be beaten up by the police because he was disrespectful." (*Anders* brief at 19-20.)

When addressing claims of prosecutorial misconduct, we are governed by the following standard of review:

> Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one. Not every inappropriate remark by a prosecutor constitutes reversible error. A prosecutor's statements to a jury do not occur in a vacuum, and we must view them in context. Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict.

*Commonwealth v. Toritto*, 67 A.3d 29, 37 (Pa.Super. 2013), *appeal denied*, 80 A.3d 777 (Pa. 2013), quoting *Commonwealth v. Lewis*, 39 A.3d 341, 352 (Pa.Super. 2012), *appeal denied*, 51 A.3d 838 (Pa. 2012). *See also Commonwealth v. Robinson*, 877 A.2d 433, 441 (Pa. 2005) (prosecutorial misconduct does not occur unless the jurors form a fixed bias and hostility toward the defendant based on the prosecutor's comments).

We shall address each of appellant's allegations separately. Appellant's first allegation that the Commonwealth altered the suppression hearing transcript was discussed in detail above. Appellant next avers that the Commonwealth "lied at a bail hearing about his knowledge of a DUI arrest and, also, called [appellant's] bondman asking that his bail be revoked." (*Anders* brief at 19-20).

As noted by Attorney Buttner in his *Anders* brief, there is no indication that the Commonwealth's conduct relating to appellant's bail affected the

outcome of the trial. (*See id.* at 30.) Accordingly, pursuant to our supreme court's holding in **Robinson** and our court's holding in **Toritto**, we find that the trial court did not abuse its discretion, as there is no evidence of record that the Commonwealth's conduct produced a fixed bias or hostility against appellant among the jurors.

Finally, appellant avers that during its closing argument, the Commonwealth stated that appellant "deserved to get beaten up by the police because he was disrespectful." (*Id.* at 20.) Putting aside that this is an incorrect statement regarding the Commonwealth's closing arguments, as noted above, the Pennsylvania Rules of Appellate Procedure require that an issue first be raised before the trial court. *See* Pa.R.A.P. 302(a). An objection to prosecutorial misconduct must be raised before the trial court in order to preserve the issue for appellate review. **Commonwealth v. Tedford**, 960 A.2d 1, 29 (Pa. 2008) ("Where, as here, no objection was raised, there is no claim of 'prosecutorial misconduct' as such available.").

Upon our review of the record, appellant failed to object to the Commonwealth's remarks cited during closing argument.[3] Accordingly, this sub-issue is waived on appeal. Appellant's fourth issue is without merit.

---

[3] Appellant did make an objection to one of the Commonwealth's remarks during closing arguments, but that objection is not before us. (*See* notes of testimony, 1/17/17 at 309.)

**V.**

In his fifth issue on appeal, appellant contends that the trial court erred when it failed to grant his motion to suppress evidence. Appellant argues that the Commonwealth failed to establish that the police had either reasonable suspicion or probable cause to detain him and conduct a pat-down search. (***Anders*** brief at 21.)

When reviewing the denial of a motion to suppress evidence, we are held to the following standard of review:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to . . . plenary review.

***Commonwealth v. Jones***, 121 A.3d 524, 526-527 (Pa.Super. 2015), ***appeal denied***, 135 A.3d 584 (Pa. 2016), quoting ***Commonwealth v. Jones***, 988

A.2d 649, 654 (Pa. 2010), ***cert. denied***, 562 U.S. 832 (2010) (internal

citations and quotation marks omitted).

> "[I]t is hornbook law that the [F]ourth [A]mendment to the United States Constitution as well as Article I, § 8 of the Pennsylvania Constitution protect citizens from 'unreasonable searches and seizures.'" ***Commonwealth v. Baer***, [] 654 A.2d 1058, 1059 (Pa.Super. 1994). Warrantless searches and seizures (such as occurred in this case) are unreasonable ***per se***, unless conducted pursuant to specifically established and well-delineated exceptions to the warrant requirement. ***Katz v. United States***, 389 U.S. 347 [] (1967). One such exception, the ***Terry*** "stop and frisk," permits a police officer to briefly detain a citizen for investigatory purposes if the officer "observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot." ***Commonwealth v. Fitzpatrick***, [] 666 A.2d 323, 325 (Pa.Super. 1995); ***Terry v. Ohio***, 392 U.S. 1, 30 [] (1968).
>
> ***Terry*** further held that "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others" the officer may conduct a pat down search "to determine whether the person is in fact carrying a weapon." ***Terry***, 392 U.S. at 24 []. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." ***Adams v. Williams***, 407 U.S. 143, 146 [] (1972).
>
> In order to conduct an investigatory stop, the police must have reasonable suspicion that criminal activity is afoot. ***Terry***, 392 U.S. at 30 []. In order to determine whether the police had reasonable suspicion, the totality of the circumstances—the whole picture—must be considered. ***United States v. Cortez***, 449 U.S. 411, 417 [] (1981). "Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the

particular person stopped of criminal activity." *Id.* at 417-418 []. To conduct a pat down for weapons, a limited search or "frisk" of the suspect, the officer must reasonably believe that his safety or the safety of others is threatened. *Commonwealth v. Arch*, [] 654 A.2d 1141, 1144 (Pa.Super. 1995). If either the seizure (the initial stop) or the search (the frisk) is found to be unreasonable, the remedy is to exclude all evidence derived from the illegal government activity. *Commonwealth v. Gibson*, [] 638 A.2d 203, 206-207 (Pa. 1994).

The *Terry* totality of the circumstances test applies to traffic stops or roadside encounters in the same way that it applies to typical police encounters. *See Commonwealth v. Mesa*, [] 683 A.2d 643, 646 (Pa.Super. 1996). Moreover, the principles of *Terry* apply to all occupants of the stopped vehicle, not just the driver. *See id.* (applying the principles of *Terry* to determine whether the police were permitted to conduct a pat down search of the passenger in a vehicle that was stopped pursuant to a motor vehicle violation). Indeed, as we have observed, "roadside encounters, between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." *In re O.J.,* 958 A.2d 561, 564 (Pa.Super. 2008) (*en banc*)*,* citing *Michigan v. Long,* 463 U.S. 1032, 1049 [] (1983).

*Commonwealth v. Simmons*, 17 A.3d 399, 402-403 (Pa.Super. 2011), *appeal denied*, 25 A.3d 328 (Pa. 2011).

At the conclusion of the suppression hearing, the trial court determined that the police conducted a lawful traffic stop of the vehicle in which appellant was a passenger, the police had reasonable suspicion to believe that criminal activity was afoot, and that the police were justified in conducting a pat-down

of appellant for the purposes of officer safety. (Notes of testimony, 7/30/16 at 52.)

The record supports the trial court's conclusions through Officer James Conmy's testimony. Officer Conmy testified that he observed the vehicle make a right turn without using a turn signal. (*Id.* at 5.) Officer Conmy initiated a traffic stop and, upon his approach to the vehicle, smelled marijuana emanating from inside the vehicle. (*Id.* at 5-6.) As he was speaking to the occupants of the vehicle, Officer Conmy observed appellant making movements "consistent with someone who was either hiding or concealing some type of contraband on his person." (*Id.* at 7.) Officer Conmy articulated that he was concerned that appellant was attempting to conceal a weapon. (*Id.*) Specifically, Officer Conmy observed that appellant "was not keeping his hands visible. . . . [H]e was kind of squirming or ducking down in the seat. He wasn't displaying what I would describe as normal behavior for a passenger." (*Id.* at 8.)

Officer Conmy's testimony provides ample support within the record that articulable facts existed that justified a pat-down search of appellant. We therefore find that the trial court did not abuse its discretion when it denied appellant's motion to suppress evidence. Accordingly, appellant's fifth issue is without merit.

**VI.**

In his sixth and final issue, appellant contends that his aggregate sentence of 39-120 months' imprisonment was harsh and excessive. Specifically, appellant's challenge to the discretionary aspects of sentence is on the grounds that the trial court failed to consider his mitigating circumstances including battling a lengthy drug addiction and that his possession of a controlled substance was for personal use relating to his addiction. (*See Anders* brief at 27-28.)

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. . . . [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

[**Commonwealth v.**] **Walls**, [926 A.2d 957,] 961 [(Pa. 2007)] (internal citations omitted).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa.Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa.Super. 2006), **appeal denied**, [] 909 A.2d 303 (Pa. 2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. **Commonwealth v. Mann**, 820 A.2d 788, 794 (Pa.Super. 2003), **appeal denied**, [] 831 A.2d 599 (Pa. 2003).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Paul**, 925 A.2d 825, 828 (Pa.Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental

> norms which underlie the sentencing process."
> *Sierra*, *supra* at 912-13.
>
> As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. *Commonwealth v. Malovich*, 903 A.2d 1247, 1252 (Pa.Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. *Id.*

*Commonwealth v. Moury*, 992 A.2d 162, 169-170 (Pa.Super. 2010).

Here, we begin our analysis by determining whether appellant has complied with the procedural requirements of challenging his sentence. First, appellant timely filed his notice of appeal pursuant to Pa.R.A.P. 902 and 903. Second, appellant filed a motion for reconsideration of sentence *nunc pro tunc* on June 15, 2017, in which he averred that the trial court failed to adequately consider mitigating circumstances surrounding his addiction to controlled substances.

The third procedural prong set forth in *Evans* requires us to determine whether appellant's brief has a fatal defect—or put another way, fails to include a statement containing the reasons relied on for an allowance of an appeal "with respect to the discretionary aspects of sentence." *See* Pa.R.A.P. 2119(f). Appellant includes such a statement in his *Anders* brief, in which he alleges that his sentence is excessive because the trial court failed to adequately consider the mitigating circumstances surrounding his addiction to controlled substances. (*Anders* brief at 27.)

Finally, we must now determine whether appellant has raised a substantial question. We have specifically held that an averment that the trial court failed to adequately consider mitigating circumstances does not raise a substantial question. *Commonwealth v. Downing*, 990 A.2d 788, 794 (Pa.Super. 2010), citing *Commonwealth v. Matroni*, 923 A.2d 444, 455 (Pa.Super. 2007), *appeal denied*, 952 A.2d 675 (Pa. 2008). Additionally, the trial court had the benefit of a pre-sentence report. We therefore find that appellant failed to raise a substantial question. Accordingly, we do not have jurisdiction to decide appellant's final issue on the merits.

In sum, the record supports Attorney Buttner's conclusion that the appeal is frivolous. Moreover, our independent review of the entire record reveals no additional non-frivolous issues. Consequently, we grant Attorney Buttner's petition to withdraw, and we affirm the judgment of sentence.

Judgment of sentence affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/13/18

- 22 -